UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-14035-Civ-Graham/Hopkins

APPLIED CONCEPTS UNLEASHED, INC.,

     Plaintiff,

v.

STEPHEN MATTHEWS, and
MATTHEWS YACHT DESIGN LLC,

     Defendants.

_____/

FILED by _____ D.C.

OCT - 1 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DE 5)

**THIS CAUSE** has come before this Court upon an Order Referring Plaintiff's Motion for Ex Parte Temporary Restraining Order, Expedited Discovery, and Preliminary Injunction (DE 5) and Plaintiff's Motion for Order Temporarily Filing Case Under Seal (DE 6) for a hearing and to take all necessary and proper action as required by law, including a report and recommendation or final order as deemed appropriate, to Magistrate Judge Lynch (DE 8) and Judge Lynch's Order of Recusal (DE 10). For the reasons that follow, this Court **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Plaintiff's Motion for Preliminary Injunction.

## BACKGROUND

Plaintiff, Applied Concepts Unleashed, Inc. ("ACUI"), commenced this action on January 30, 2012 (DE 1). The Verified Complaint in this case alleges: Copyright infringement (Count I); violation of the Computer Fraud and Abuse Act (Count II); Breach of Defendant Stephen Matthews' Employment Agreement (Count III); and Civil Theft under Section 812.081(1)(c) of Florida Statutes

(DE 1). The District Court affirmed the undersign's Report and Recommendation as to Plaintiff's Motion for the Temporary Restraining Order, and denied that Motion. (DE 29). On April 2, 2012 and April 5, 2012, the undersigned held a hearing on Plaintiff's Motion for Preliminary Injunction. Plaintiff and Defendant introduced testimony and other evidence. Subsequently, the District Court granted Defendant's Motion to Dismiss Counts III and IV of the Complaint. (DE 45). Because Plaintiff does not appear to seek an injunction preventing Defendants from violating the Computer Fraud and Abuse Act, the only remaining issue before this Court is whether Plaintiff is entitled to a preliminary injunction restraining Defendants from infringing ACUI's copyright. The parties obtained leave and submitted several supplemental briefs after the hearing in support and opposition of the Motion for Preliminary Injunction. (DEs 40, 42, 54, 55).

Plaintiff alleges that Stephen Matthews ("Matthews" or "Defendant Matthews") was an employee and officer, V.P. of Marine Design, of ACUI, and that he had full access to all of Plaintiff's computer systems and files. Matthews resigned his employment with ACUI on July 14, 2010 and started his own yacht design company under the name "Matthews Yacht Design, LLC" (Compl. ¶ 40, DE 1). Plaintiff argues that Matthews took 24 CDs of yacht designs. According to the Plaintiff, Matthews' yacht designs published on his website are strikingly similar to ACUI's, and that the file names are likewise very similar.

In support of its copyright claim, Plaintiff submitted four (4) copyright registrations by Stephen French, President of ACUI, which are assigned to the Plaintiff. Registration VAu 1-081-285 is for the design series[1] (several vessels of different lengths) completed in 1999, which contains

---

[1]The Spencer Yachts series includes drawings and concept renderings for (1) 43' Express Sportfish; (2) 49' IPS Express; (3) 52' yacht; (4) 53' IPS Express; (5) 54' Sportfisherman; (6) 59' Sportfish; (7) 60' IPS Sportfisherman; (8) 61' Sportfish; (9) Spencer 62'; (10) 64' Sportfisherman;

"Spencer Yachts" in the title box of the drawings. (Exh. A, DE 7-1). Registration number VAu 1-080-473 is for the design series[2] completed in 2003, which contains "F&S Boatworks" in the title box of the drawings. (Exh. B, DE 7-7). Registration number VAu 1-080-471 is for the design series[3] completed in 2004, which contains "Bonadeo Boatworks" in the title box of the drawings. (Exh. C, DE 7-19). Registration number VAu 1-080-471 is for the design series[2] completed in 2005, which contains "Carolina Yachts" in the title box of the drawings. (Exh. B, DE 7-20).

## DISCUSSION

A court can issue a temporary or final injunction to prevent or restrain infringement of copyright. 17 U.S.C. § 502. However, section 502 does not contain rules pertaining to injunctions. *Id.* In the absence of specific rules applicable to copyright, a court must proceed under the general rules governing injunctive relief. *First Tech. Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 649-50 (6th Cir. 1993).

Federal Rule of Civil Procedure 65 governs preliminary injunctions with notice to the adverse party. Fed. R. Civ. P. 65(a). "A district court may grant an injunction if the movant shows the

---

(11) 66' Sportfish; (12) 70' Sportfisherman; (13) 76' Sportfish; (14) 85' IBP IPS; and (15) 86' Sportfisherman.

[2] The F&S Boatworks series includes photographs, as well as drawings and concept renderings for (1) 75' Enclosed Bridge; (2) 72' Sportfisherman; (3) 68' Sportfisherman; (4) 70' Sportfisherman; (5) 67' Sportfisherman; (6) 62' yacht for Manuel Batlle (7) 61' Sportfisherman; (8) 54' Express; (9) 45' XPW; (10) 44' XPW; (11) 40' Express; and (12) 85' Enclosed bridge yacht.

[3] The Bonadeo Boatworks series includes drawings and concept renderings for (1) 34' Cuddy Cabin; and (2) 31' boat.

[2] The Carolina Yachts series includes photographs, as well as drawings and concept renderings for (1) 60' Sportfish; (2) 58' Sportfish; (3) 54' IPS Express; and (4) 40' OBX Express.

following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). A preliminary injunction is an extraordinary remedy, and movant must clearly establish the burden of persuasion as to the four requirements. *Id.* A court may only issue a preliminary injunction if the movant gives security that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined. Fed. R. Civ. P. 65(c) The purpose of a preliminary injunction is to maintain the status quo until the district court can resolve the case on the merits. *United States v. DBB, Inc.*, 180 F.3d 1277 (11th Cir. 1999).

At the preliminary injunction stage, a court may rely on affidavits and hearsay materials which would not be admissible for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceedings. *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

## A. Substantial likelihood of success on the merits

In order to establish a claim of copyright infringement, plaintiff must show: (1) ownership of a valid copyright in the work, and (2) copying by the defendant. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 824 (11th Cir. 1982).

## 1. Registration

A certificate of registration made before or within five years after first publication of the work constitutes prima facie evidence of validity of the copyright. 17 U.S.C. § 410(c). Weight accorded to certificates obtained after five years from publication is within the discretion of the trial

court. *Id.* Publication is defined as:

> distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

17 U.S.C. § 101.

Limited publication does not constitute "publication" for copyright purposes. *See Aerospace Serv. Int'l. v. LPA Group, Inc.*, 57 F.3d 1002, 1002 (11th Cir. 1995); *Logicom Inclusive Inc. v. W.P. Stewart & Co.*, 04 Civ. 0604 (CSH), 2004 WL 1781009 at *6 (S.D.N.Y. Aug. 10, 2004). Limited publication is publication that "communicates the contents of a [work] to a definitely selected group and for a limited purpose, and without the right of diffusion, reproduction, distribution or sale." *Aerospace Serv. Int'l.*, 57 F.3d at 1002 (quotation omitted). Confidentially giving a copy of the copyrighted material to another company is not likely to constitute distribution to the public. *Computer Assoc. Int'l v. Quest Software, Inc.*, 333 F. Supp.2d 688, 698 (N.D. Il. 2004).

Here, the Certificates of Registration under the "Completion/ Publication" sections only specify years of completion as 1999 (VAu 1-081-285); 2003 (VAu 1-081-473); 2004 (VAu 1-081-416); and 2005 (VAu 1-080-471). All of these dates are more than five years prior to the Certificates' date of August 8, 2011. However, many of the drawings are dated much later than the specified dates of completion. Publication dates are not specified.

Each design was created for a specific client, and there is no evidence that these were distributed to the public or a group of persons. This suggests that designs were not published under the Copyright Act. However, Plaintiff charged fees for some or all of the designs, which, therefore, were distributed by sale with possible right to sell further, rather than simply communicated for a

limited purpose. This suggests that more than limited publication may have occurred. However, if the works were published, it is unclear when publication took place. Therefore, Plaintiff did not clearly show that Certificates of Registration were obtained prior or within five years of publication of the works. Consequently, weight to be accorded to the Certificates of Registration is within the discretion of the Court.

Copyright law favors the policy of only allowing prospective application of licenses and assignments of copyright. *See Davis v. Blige*, 505 F.3d 90, 101-06 (2d Cir. 2007). Here, the Certificates of Registration were issued to Stephen Michael French, and not to Plaintiff ACUI. Mr. French assigned his purported title[3] in the copyright to ACUI, but this assignment took place on January 26, 2012, or after the infringing acts alleged in the Complaint occurred. Therefore, the Certificates of Registration in this case should only be afforded little or no weight, and should not constitute prima facie evidence of Plaintiff's ownership of a valid copyright.

However, notices on the drawings subject to the registration certificates purport to vest the copyright in ACUI.[4] Copyright registration is not a prerequisite to copyright protection. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 823 n. 1 (11th Cir. 1982). A valid copyright in an original work is created at the moment the work is fixed in any tangible medium of expression. *Id.* An author must attach a copyright notice to any copies of his work that are "published" within the definition of section 101 of the Copyright Act, 17 U.S.C. § 101. *Id.* (citing

---

[3]As subsequent analysis in section (A)(3) shows, ACUI, rather than Mr. French, is the owner of the drawings in question. However, the fact remains that the Certificates of Registration were not issued to the Plaintiff in this action.

[4]Some notices are too small to read the text. However, it is undisputed that the notices on the drawings attempt to vest copyright in ACUI.

17 U.S.C. § 401). Registration is not obligatory, although registration is a prerequisite to an infringement suit in certain circumstances and also is a prerequisite to certain infringement remedies. *Id.* (citing 17 U.S.C. §§ 408, 411, and 412). Further, district courts have subject matter jurisdiction over copyright infringement suits involving unregistered works. *Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 1247 (2010).

Section 411 of the Copyright Act states that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). A certificate of registration of copyright satisfies this requirement even if it contains inaccurate information, unless "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." *Id.*; *see also Olem Shoe Corp. v. Washington Shoe Co.*, 09–23494–CIV, 2010 WL 3505100 (S.D. Fla. Sept. 3, 2010).

Because the undersigned here finds that if Plaintiff supplied the Register of Copyright with any inaccurate information, it was not done with knowledge that the information was inaccurate, as discussed below, the statutory requirement of registration is satisfied. Therefore, the Court will continue the analysis to examine whether Plaintiff can establish ownership of a valid copyright.

## 2. Valid copyright

### a. Subject matter

The Copyright Act, 17 U.S.C. § 501 *et seq.*, does not protect ideas or concepts. 17 U.S.C. § 102(b). It does protect the following categories of creations:

(1) literary works;

(2) musical works, including any accompanying words;
(3) dramatic works, including any accompanying music;
(4) pantomimes and choreographic works;
(5) pictorial, graphic, and sculptural works;
(6) motion pictures and other audiovisual works;
(7) sound recordings; and
(8) architectural works.

17 U.S.C. § 102(a).

The works in question here are described on the Certificates of Registration as "text, 2-D artwork, technical drawing," and deposit copy included with the Certificates consists of drawings, concept renderings, and photographs. The Complaint here refers to "designs" and "drawings." Therefore, the works in question fall within the "pictorial, graphic, and sculptural works"[5] ("PGS") category, which is defined to include:

> two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned;

17 U.S.C. § 101.

Section 101 states further:

> the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately

---

[5]The only other possible category applicable to the designs in question is "architectural works," which are defined as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." 17 U.S.C. § 101. The term "building" is not defined precisely in the Copyright Act. *See* H.R.Rep. No. 101-735, as reprinted in 1990 U.S.C.C.A.N. 6935, 6951 ("This deletion [of the phrase 'or other three-dimensional structures' from the legislation], though, raises more sharply the question of what is meant by the term 'building.' Obviously, the term encompassed habitable structures such as houses and office buildings. It also covers structures that are used, but not inhabited, by human beings, such as churches, pergolas, gazebos, and garden pavilions"). While yachts can be living spaces, regulations make it clear that boats cannot be registered as "architectural works." *Patriot Homes, Inc. v. Forest River Housing, Inc.*, 548 F. Supp.2d 647, 650 (N.D. Ind. 2008) (quoting 37 C.F.R. § 202.11(d)).

from, and are capable of existing independently of, the utilitarian aspects of the article.

*Id.*

### i. Designs

A "useful article" is defined in turn as an "article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. Further, an "article that is normally a part of a useful article is considered a 'useful article'" *Id.*

Thus, a useful article as a whole does not receive copyright protection. *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308 (11th Cir. 2010). However, separable design elements of the underlying article can be protected. *Id.* Separability can be either physical or conceptual. *Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 923 (11th Cir. 1983).

Physical separability exists when artistic features would remain intact after the removal of the features necessary for the utilitarian function of the article. *Norris*, 696 F.2d at 923 (quoting 1 M. Nimmer, Nimmer on Copyright, § 2.08[B][3] and discussing with approval *Tel. Arnold, Ltd. v. Silvercraft Co.*, 259 F. Supp. 733 (S.D.N.Y. 1966), where the court found that a simulated antique telephone encasing a pencil sharpener was copyrightable because the telephone casing was physically separable and capable of existing independently as a work of art).

Conceptually separability is not easily defined. *See Galiano v. Harrah's Operating Co.*, 416 F.3d 411, 417 (5th Cir. 2005) (there are at least six distinct variations of the test in different circuits). Courts "have twisted themselves into knots trying to create a test to effectively ascertain whether the artistic aspects of a useful article can be identified separately from and exist independently of the article's utilitarian function." *Id.* (quoting *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 915 F.2d 663, 670 (3d Cir. 1990)). "The Eleventh Circuit held that conceptual separability extends to 'ornamental, superfluous designs contained within useful objects.'" *Bel Air Lighting, Inc. v.*

*Progressive Lighting, Inc.*, 1:07-CV-2822-TWT, 2010 WL 966422, at *4 (N.D. Ga. Mar. 15, 2010) (quoting *Norris*, 696 F.2d at 924). Further, a lamp that incorporated a statuette of dancing figures can be protected. *Mazer v. Stein*, 347 U.S. 201, 218 (1954).[6] Likewise, sculptured belt buckles that had been registered by the Copyright Office as jewelry can be protected. *Norris*, 696 F.2d at 924 (discussing the belt buckle case of *Kieselstein-Cord v. Accessories By Pearl, Inc.*, 632 F.2d 989 (2d Cir. 1980)).[7]

The Eleventh Circuit also noted that functional components of useful articles, no matter how artistically designed, have generally been denied copyright protection unless they are physically separable from the useful article. *Norris*, 696 F.2d at 924. For example, designs of automotive wire wheel covers and light fixtures are not protected by copyright because they are inseparable from the utilitarian aspects of the underlying articles. *Norris*, 696 F.2d at 924 (wire wheel covers did not contain a superfluous sculptured design which served no function and were not subject to copyright); *Bel Air Lighting*, 2010 WL 966422 (light fixtures in a shape of fleur-de-lis were not protected because the design features were functional components). In the same vein, the Fourth Circuit stated that the industrial design of a unique, aesthetically pleasing chair cannot be separated from the chair's utilitarian function, and is not subject to copyright. *Universal Furniture Int'l, Inc. v. Collezione Europe USA, Inc.*, 618 F.3d 417, 433 (4th Cir. 2010). This is so because the objective of the chair design is to create a utilitarian object, albeit an aesthetically pleasing one, whereas the

---

[6]Current 1976 Copyright Act expressly implements the holding of this case. *Galiano*, 416 F.3d at 417, n. 11.

[7]In synthesizing Ninth and Second Circuits' approaches, the Fifth Circuit noted that copyrightability of a useful article turns on the "capacity of the item to moonlight as a piece of marketable artwork." *Galiano*, 416 F.3d at 420.

objective of creating a statue of a dancer adoring a lamp is to express the idea of a dancer. *Id.*

Thus, the spectrum is between artistic jewelry and statuettes, which are copyrightable separately or as a part of a useful article, and wheel covers and furniture, which are plainly useful articles inseparable from their artistic elements.

Here, yachts have an intrinsic utilitarian function that is not merely to portray the appearance of an article or to convey information. The function is one of a boat, and more specifically, of a sportfishing yacht.[8] Thus, the yachts are useful articles and can only be protected to the extent that

---

[8]Codification of official Copyright Office policy, Compendium II of Copyright Office Practices (1984), which is now being revised, listed boats as one of the examples of useful articles that are not subject to copyright. *Whimsically, Inc. v. Rubie's Costumes, Inc.*, 721 F. Supp. 1566, 1571 (E.D.N.Y. 1989) (reversed in part) (quoting Compendium II).

  Further, in 1998 in response to *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141 (1989), the Copyright Act was amended by the Vessel Hull Design Protection Act (VHDPA). *See* 17 U.S.C. §§ 1301 *et seq.*; 2-8A Nimmer on Copyright §8A.13. In *Bonito Boats*, the Supreme Court struck down a Florida statute, which made it unlawful to use direct molding process to duplicate boat hulls, on preemption grounds because the statute conferred patent-like protection. *Id.* at 152.

  VHDPA protects original designs of boat hulls, and creates a host of formalities, including registration separate from registration under the rest of the Copyright Act. *See* 17 U.S.C. §§ 1301 *et seq.* Boat hull is the exterior frame or body of a vessel, exclusive of the deck, superstructure, masts, sails, yards, rigging, hardware, fixtures, and other attachments. 17 U.S.C. § 1301 (b)(4).

  Because boat hulls are now granted protection expressly, it is not clear whether boat hull designs can receive protection under other provisions of the law. 2-8A Nimmer on Copyright §8A.21. However, VHDPA contains the following section:

  Nothing in this chapter [17 U.S.C. §§ 1301 *et seq.*] shall annul or limit –
  (1) common law or other rights or remedies, if any, available to or held by any person with respect to a design which has not been registered under this chapter; or
  (2) any right under the trademark laws or any right protected against unfair competition.

17 U.S.C § 1330.

  Overall, the fact that VHDPA was put in place suggests that boat hull designs cannot receive protection under other sections of the Copyright Act. Rather, such designs are appropriate subject matter for design patents. *See Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 167 (1989).

the design incorporates pictorial, graphic, or sculptural features that can be separated either physically or conceptually from the utilitarian aspects.

The designs' appeal is in the use of the compound curves, the outside curvature and shapes of the yachts, and the feel of the design being one of Mr. French's. Apr. 5, 2012 Hr'g Tr., 167 - 170 (DE 44). This is what is referred in the industry as the "French curve" or "French look," and what allows ACUI designs to be recognized from afar. *Id.*

However, these design elements are not separable from the yachts. The curvature of the hull or of the windshield of the yacht cannot be physically separated from the underlying article and cannot exist on its own. Review of the materials reveals no other design elements that can be physically separated from the yachts to receive protection.

Further, no design elements can be separated even conceptually. There are no superfluous design elements that serve no functions on the yachts in question. The designs are much more similar to industrial designs of furniture than to designs of jewelry or items incorporating jewelry, statuettes, or other pieces of art.

While the designs may be very aesthetically pleasing and deserve the reputation in the industry as premier yacht designs, there are no artistic elements that can be separated and exist independently. Therefore, the designs cannot be protected by copyright.

### ii. Concept renderings and photographs

Concept renderings and photographs incorporated in the deposit copy accompanying the

---

Here, Plaintiff seeks protection for its hull designs as well as designs of other parts of the boats. There is no evidence that Plaintiff registered its hull designs under VHDPA, and Plaintiff does not base its claim on VHDPA.

Certificates of Registration may be protected subject matter. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010) (photographs); *Howard v. Sterchi*, 974 F.2d 1272 (11th Cir. 1992) (renderings). However, Plaintiff does not allege that Defendants copied these works. Rather, the Complaint repeatedly refers to Plaintiff's original designs, *see* Compl. ¶¶ 38, 49, 58, 65, 72, 77, 81, 84, 98, 99, 113, and drawings, *see* Compl. ¶¶ 46, 51, 54, 57,63, 67, 74, which Defendants unlawfully copied. Therefore, even if photographs and renderings are protected by copyright, Plaintiff's claim would fail with respect to these works because Plaintiff does not allege that Defendants copied them.

### iii. Technical drawings

Copyright in technical drawings or plans is distinct from copyright in the subject of the drawings. *See* 17 U.S.C. § 113(b) (" This title does not afford, to the owner of copyright in a work that portrays a useful article as such, any greater or lesser rights with respect to the making, distribution, or display of the useful article so portrayed than those afforded to such works under the law, whether title 17 or the common law or statutes of a State, in effect on December 31, 1977, as held applicable and construed by a court in an action brought under this title. "); *see also Donald Frederick Evans and Assoc., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 904 (11th Cir. 1986) ("construction of a substantially identical residential dwelling is not prohibited by the existence of a copyright in the architectural drawings for the original dwelling"); *Dream Custom Homes, Inc. v. Modern Day Const., Inc.*, 773 F. Supp. 2d 1288, 1300 (M.D. Fla. Feb. 22, 2011) (same).

Therefore, even if Plaintiff cannot establish valid copyright in the designs of the yachts, the drawings themselves can be subject to copyright based on sections 101 and 102, which allow protection for technical drawings insofar as their form but not their mechanical or utilitarian aspects. *See* 17 U.S.C. § § 101, 102.

**b. Originality**

"The central requirement of copyright protection for a work is that the work must have an element of originality." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 824 (11th Cir. 1982). The concept of originality is not easy to define, but it is a low threshold requirement. *Id.* As long as the author contributed something that is more than a merely trivial variation, something that is "his own," the work is original for copyright purposes. *Id.* (quoting *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102 (2d Cir. 1951)).

Here, Defendants challenge Plaintiff's copyright on the basis that ACUI based its designs on the designs by Mr. French when he worked for Garlington Yachts. Plaintiff entered into evidence Exhibit V, a comparison for ACUI Spencer 62' with Garlington 61'. The exhibit demonstrates that Spencer 62' design differs from the Garlington design in several respects. Spencer 62' (1999) has a taller hull; long overhang with sharp corners; windows with small radii; and a curved windshield with creases. Garlington 61' (1988) has a hull that is less tall; short overhang with soft radii; and a windshield without creases. These are more than trivial variations, and Spencer 62' design is original for copyright purposes.

Further, Defendants allege that ACUI did not independently create the designs. Defendants provided affidavits of owners of F&S Boatworks and Carolina Yachts stating that they provided designs to ACUI to work from. Floyd Aff. (DE 33-6); Howell Aff. (DE 33-7). Also, the affidavit of Paul Spencer, the owner of Spencer Yachts, states that ACUI used measurements from a pre-existing yacht, which was not designed by ACUI. Spencer Aff. (DE 33-8). Mr. French admitted that he measured a pre-existing hull for the first job for Spencer Yachts. Apr. 5, 2012 Hr'g Tr., 118:17-19 (DE 44). However, he also testified that the hull that was ultimately built was different.

*Id.* Plaintiff argues that Mr. French's designs are well-known in the industry, and that they are distinct.

The Court finds Mr. French's testimony credible. The boat builders and clients would not be paying ACUI substantial sums of money to design the vessels if all they wanted done was to copy another design, or only make trivial variations. Therefore, the designs are original for the purposes of copyright.[9]

It became clear from Mr. French's testimony at the hearing that ACUI essentially only claims copyright in the design of the hulls and superstructure of the yachts. ACUI did not design the "towers" and "outriggers,"[10] and does not claim copyright in these. Rather, ACUI simply added these features, which were designed by their respective manufacturers, to the designs. Defendants argue that this misrepresentation renders the copyright registration invalid. However, having the registration is not a prerequisite to Plaintiff's copyright protection. The fact remains that Plaintiff may have copyright in the original elements of the drawings, which are the superstructure and the hull of the yachts.[11] *Cf. Whimsically, Inc. v. Rubie's Costumes, Inc.*, 891 F.2d 452, 456 (2d Cir. 1989)

---

[9] This is so with the exception of the hull of the 62' F&S sportfishing vessel for Manuel Batlle, which Mr. French admits was provided to him. Apr. 5, 2012 Hr'g Tr., pp. 103-04 (DE 44). The hull also appears in a different color in the drawing of the 62' F&S yacht.

[10] At the hearing, Mr. French identified the "tuna tower" as the structure at the very top of a yacht, and the "outriggers" as the fishing poles that extend towards the back of the yacht.

[11]Further, the Court finds that Plaintiff committed no intentional misrepresentation when applying for the copyright registration. Misrepresentations in a copyright application can render copyright unenforceable. *See Original Appalachian Artworks, Inc.*, 684 F.2d at 828. However, courts generally uphold the copyright when there was no "intentional or purposeful concealment of relevant information." *Id.* The Court finds Mr. French's testimony credible when he testified as follows:
Mr. Larson, Plaintiff's attorney. Can you tell me the process you went through or Applied Concepts went through to register your copyrights?

(plaintiff, knowing that its creations are not subject to copyright protection, misrepresented its costumes as soft sculptures on the application for copyright registration, and because of this misrepresentation did not have valid copyrights capable of enforcement).

## 3. Ownership

### a. Authorship

Generally, under the work for hire doctrine, the employer for whom an employee creates a work subject to copyright protection becomes the owner of the copyright. *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 (1989). However, the hiring party does not own the copyright in the work created by an independent contractor. *Van Cleef & Arpels SA v. Teen Angel Inc.*, 08-80688-CIV, 2009 WL 2600360, at *4 (S.D. Fla. Aug. 21, 2009) (citing *Howard v.*

---

Mr. French. Yes. First thing we did was called an attorney and asked them, you know, were our copyrights, the little copyright that's at the bottom of all our title blocks, sufficient. And what I understood was that that is protection but it is not everything that you want. You want to get registered with the Library of Congress. And I asked him what expense would be associated with that. We were hurting pretty bad financially at that point, couldn't come up with the money to register, you know, through an attorney at all. So Hilary, my secretary, and I got on the Library of Congress website and did our very best to wade through it. And it seemed like each page, we would find something new. We would call the help desk with the Library of Congress, ask them what do we do with this page, what do we check in this box. Often the pages would time out or it would be 9:00 at night and she would need to get home. We would get in the next morning, start all over again, and it took us a process of about three months to register as we did.

.   .   .

Mr. Larson.  Did you have any deceptive intent when you filled out --

Mr. French. Absolutely not. Confusion, yes. Deceptive intent, no. In fact, Hilary and I redid the forms many times over doing our very best to try to get it right.

Apr. 5, 2012 Hr'g Tr., pp. 61-63 (DE 44).

*Sterchi*, 974 F.2d 1272 (11th Cir. 1992)). If the hiring party and the independent contractor create the work together, they are co-authors and own the copyright together. *Id.*

The courts should use the law of agency when determining whether a person is an employee under the Copyright Act, and use such factors as the hiring party's right to control the manner and means by which the product is accomplished; the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 (1989). No single factor is determinative. *Id.*

Defendant Matthews argues that he was an independent contractor of ACUI from approximately March of 2005 until approximately January of 2007. Matthews Aff. ¶ 4 (DE 33-2). Some of the drawings at issue are dated during this period of time. Some drawings, dated with various dates, have Defendant Matthews' name on them. However, Mr. French testified that Defendant Matthews was a salaried employee, and that he received W-2s in 2005, 2006, and 2007. Apr. 2, 2012 Hr'g Tr., pp. 5-7. Defendant Matthews also wrote letters on ACUI letterhead and signed his name as "Stephen Matthews, V.P. of Applied Concepts" during that period of time. *Id.* Additionally, ACUI provided Defendant Matthews with benefits in the form of vacation pay, health insurance, and a company car. *Id.* Defendant Matthews also worked on ACUI's computers and software. *Id.* Therefore, under the *Community for Creative Non-Violence* test, Defendant Matthews

was an employee, and not an independent contractor.

Mr. French testified that his name, and not ACUI's, was listed on the certificates of registration because the application process was confusing to pursue without an attorney, whose services he could not afford. Apr. 5, 2012 Hr'g Tr., pp. 61-62 (DE 44). Further, Mr. French testified that he was under the impression that he had to put a person's name, rather than a corporation's name, as the author because the website of the Library of Congress asked for a date of birth. *Id.* The Court finds this testimony as to lack of intent to deceive credible. Because copyright registration is not a prerequisite to copyright protection, and because copyright notices on the drawings state that copyright belonged to Applied Concepts Unleashed, Inc., ACUI is the author of the drawings for the purposes of the preliminary injunction.

### b. License

Plaintiff must have had ownership or exclusive copyright in the work at the time alleged infringement occurred. *World Thrust Films, Inc. v. Int'l Family Entertainment, Inc.*, 93-0681-CIV, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1 1996) (quoting M. Nimmer and D. Nimmer on Copyright § 12.02[B]). Once the copyright owner grants an exclusive license, only the exclusive licensee, and not the original owner, has standing to sue. *Id.*; *see also Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007).

"There are two general categories of licenses: non-exclusive licenses, which permit licensees to use the copyrighted material and may be granted to multiple licensees; and exclusive licenses, which grant to the licensee the exclusive right-superior even to copyright owners' rights-to use the copyrighted material in a manner as specified by the license agreement." *Saregama India Ltd. v. Mosley*, 687 F.Supp.2d 1325, 1333 (S.D. Fla. 2009) (quoting *Davis v. Blige*, 505 F.3d 90, 99–100

(2d Cir. 2007)). Generally, license is a "right to use the copyright in some manner, but the licensor retains ownership." *Corbello v. Devito*, 832 F.Supp.2d 1231, 1241 n. 4 (D. Nev. Oct. 27, 2011). However, the concept of "exclusive license" in copyright nearly merges with the concept of transfer of ownership. *See* 17 U.S.C. § 101 ("A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license"); *Davis v. Blige*, 505 F.3d 90, 100 n.10 (2d Cir. 2007). Exclusive licensee is the only one who can exercise a right. *See Davis*, 505 F.3d at 100 n.10. However, it is possible to share ownership of a right with co-owners. *See id.* A non-exclusive license is, in essence, a promise not to sue the licencee for infringement. *Jacob Maxwell v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997).

An exclusive license must be in writing. *See* 17 U.S.C § 204(a); *Jacob Maxwell*, 110 F.3d at 752 (11th Cir. 1997). State law governs the interpretation of copyright contracts. *Id.* at 752, n.2.

Under Florida law,[12] when interpreting whether a license granted in writing is exclusive or non-exclusive, the court must interpret the contract "reasonably to give effect to the plain intention of the parties as adduced from the whole agreement, its nature, their situation, and the objects they had in view in making it." *Arden Shoe Corp. v. Dr. M.W. Locke Shoes of Miami, Inc.*, 50 So.2d 120, 122 (Fla. 1951). When the parties entered into written contracts which "industriously express" the obligations which each is to assume, the courts should be reluctant to enlarge the obligations by implication as to important matters." *Id.* The license is exclusive when it is granted to only one

_____

[12]The contracts at issue here do not specify the law of which state governs them. ACUI is located in Florida, and the work under the contracts was likely performed in Florida. Therefore, this Court applies Florida law.

client. *See id.* (license was not exclusive when nothing in the licensing agreement prevented defendant from selling its products at retail locations not belonging to the plaintiff).

To establish standing, plaintiff only needs to show that it is the exclusive owner of any one of the rights protected under the Copyright Act that is relevant to the claims. *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 382-83 (7th Cir. 2011).

The Copyright Act grants copyright owners the following rights:

(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.

The rights are divisible. *HyperQuest, Inc.*, 632 F.3d at 383-86. Each right can be conveyed to a different person, and each can be subdivided. *Id.* In this case, the allegations concern the first three rights.

Use of the phrase "exclusive license" in a copyright contract is not dispositive. *Id.* Rather, substance of the agreement as a whole controls. *Id.* When copyright owner transfers some of its ownership rights but retains some others, only careful analysis of the agreement can determine whether exclusive rights were conveyed. *Id.* at 385-86. A right to exclude others, standing alone, may not be sufficient to confer standing. *See id.* at 385.

In this case, two contracts for the design of yachts were entered into evidence, and one more was entered in the record.[13] The first one is for the design of the 62' Spencer Yachts vessel.[14] (DE 35-2). It states that ACUI will retain ownership of the design and design plans, and that the client will not permit any person to copy or utilize the design without written permission of ACUI and Mr. French. Therefore, this is not an exclusive license.

The contract for the design of a 62' custom sportfishing vessel for F&S Boatworks and Manuel Batlle, the client, is different. This contract includes the "Ownership of Design" provision, which states:

> All design concepts, documentation, specifications, calculations, and prototypes developed by the Designer under the terms of this Design Contract are 'Instruments of Service' and as such remain the property of the Designer until all obligations of this contract are met for both project completion and payment. Designer prepares these Instruments of Service for the **exclusive** use of the Client in the design and development of the Vessel. Use of said Instruments of Service for additional designs or by other persons, entities or other organizations shall only occur with the written mutual consent of both Designer or Stephen M. French and Client.

(DE 35-5, p. 3 of 18) (emphasis in the original).

The contract goes on to specify that the client will owe ACUI a percentage of the sale price of any vessel which incorporates any portion of the design in question. *Id.*

Mr. French testified that the project was completed and paid in full. Apr. 5, 2012 Hr'g Tr.,

---

[13]Courts can consider materials in the record on a motion for preliminary injunction. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310-13 (11th Cir. 1998). The primary purpose of an evidentiary hearing is to make credibility determinations. *Id.* While the Court held an evidentiary hearing in this case, the Court is not prevented from considering materials available in the record that were not entered into evidence.

The record also includes a contract between ACUI and F&S Boatworks for the design of a 66' vessel for Jay Johnston (DE 35-5, pp. 14-18). However, ACUI does not appear to base its claim on the drawings for a 66' F&S yacht.

[14]There is no signature page for this contract in the record. However, copies of the checks from Spencer Yachts to ACUI are included.

p. 105 (DE 44). The contract is clear in its intent to only preserve ACUI's full copyright ownership of design documentation, or drawings, until all obligations of this agreement are met. After the obligations are met, it appears that the design and drawings cannot be used for additional designs or by other persons without written consent of both the designer, ACUI, and the client. Thus, ACUI and the client retained similar rights to exclude third parties from being able to use the designs and drawings to either reproduce, prepare derivative works, or to distribute these copyrighted works for sale.

Despite the fact that under the contract ACUI gave the client the "exclusive" right to use the design and drawings for the purposes of building one vessel, this contract does not grant an exclusive license. While Plaintiff cannot demonstrate that it has an exclusive right to reproduce, prepare derivative works, or to distribute the drawings for sale, or any portion of any of any of these rights, the client would not have such exclusive rights either. Therefore, neither Plaintiff's nor the client's rights are superior to each other, which is what an exclusive license in copyright implies. *See Davis v. Blige*, 505 F.3d 90, 99–100 n. 10 (2d Cir. 2007). Thus, rather than give the client an exclusive license to the design and the drawings, the contract in question appears to transfer partial ownership. Therefore, Plaintiff did not lose its standing to bring suit for copyright infringement as the result of entering into this agreement.

The last contract is between ACUI and F&S Boatworks for the design of a 68' custom sportfishing vessel executed by Mr. Floyd on June 21, 2005. (DE 35-5, pp. 7-12 of 18). No end-user client was a party to this contract. However, its provisions are similar to the contract for the 62' F&S vessel in relevant respects. Therefore, ACUI likewise did not grant an exclusive license to its copyright under this contract.

Mr. French testified that ACUI had similar but not identical contracts covering other projects. Apr. 5, 2012 Hr'g Tr., pp. 102-03 (DE 44). However, many projects proceeded without a written contract, but on the basis of a "gentlemen's agreement" that the terms for the subsequent boats would be the same as for the prior ones, and a single-page proposal outlining the project. *Id.* Because there were no written contracts, exclusive licenses could not have been granted for those designs and plans. Therefore, there is nothing in the record at this point to deprive Plaintiff of its standing to sue on the rest of the drawings that are subject to this suit.

Defendant Mathews testified that when he used ACUI's drawings, he did so under the direction of the boat builders, ACUI's customers, who paid for the designs and could use them. Apr. 5, 2012 Hr'g Tr., pp. 178-79 (DE 44). In the Answer, Defendants argue that ACUI gave implied license to the boatbuilders to make modifications to the designs and to distribute and copy the work. Def.'s Answer, p. 14 (DE 59). However, the argument that Defendants acted solely at the direction of the builders is greatly undermined by the fact that Defendants posted the designs on www.matthewsyachtdesign.com, which was not likely done at the direction of the boat builders.

Further, according to several contracts in the record, the builders would be required to obtain written permission from ACUI or Mr. French to use existing designs and drawings for additional designs. Therefore, even if implied licenses were granted, there is a strong indication that without Plaintiff's or Mr. French's written permission the builders would be exceeding the terms of the licenses. Therefore, this defense is not likely to defeat Plaintiff's claim.

### 4. Copying by the Defendants

The prong of copying entails proof of both factual and legal copying. *Peter Letterese and Assoc., Inc. v. World Inst. of Scientology Enter., Int'l*, 533 F.3d 1287, 1300 (11th Cir. 2008).

Plaintiff must establish that (1) defendant, as a factual matter, copied portions of the plaintiff's copyrighted work, and (2) that as a mixed issue of law and fact, those copied elements of the work are protected expression and of such importance to the copied work that the appropriation is actionable. *Id.*

Plaintiff may prove factual copying directly, but such situations are rare. *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010). If direct evidence is not available, plaintiff may establish that the works are "strikingly similar,"or that defendants had access to the copyrighted work and probative similarity. *Peter Letterese and Assoc., Inc*, 533 F.3d at 1300-01. Probative similarity exists when an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work. *Id.* at 1301 n. 16.

Copying is legally actionable when there is substantial similarity between the allegedly infringing work and the protectable original elements of plaintiff's copyrighted creation. *Id.* at 1301.

Here, there is both direct and indirect evidence of factual copying. Direct evidence consists of Defendant Matthews' testimony that Mr. Floyd, the owner of F&S Boatworks, gave him a physical drawing with ACUI's copyright on it, which Defendant Matthews traced over to make some changes to arrive at his 66' F&S Sportfisherman design. Apr. 5, 2012 Hr'g Tr., pp. 173-80 (DE 44). A boat is currently being built based on Defendant Matthews' 66' design. *Id.* at 182-83. Defendant Matthews then based a concept design of an 80' yacht on his 66' design. *Id.* He also testified that he disregarded ACUI's copyright notices. *Id.* at 179.

Defendant Matthews likewise admitted to taking a PDF of a drawing he created at ACUI and copying it to make another design. *Id.* at 189-93. This testimony was in regards to the ACUI's Spencer 53' IPS Express drawing. *Id.*

Further, it is undisputed that Defendant Matthews had access to Plaintiff's computer systems when he was employed by ACUI. Plaintiff introduced Exhibits T and S. Exhibit S contains overlays of ACUI's drawings of 67' F&S Boatworks Sportfisherman and Defendants' F&S 66' and 80' yachts. Exhibit T is an overlay of ACUI Spencer 53' IPS Express and of Defendants' Spencer 53' IPS Express SY design. The drawings match perfectly.

Defendants likewise posted on www.matthewsyachtdesign.com many drawings that match perfectly or nearly perfectly with Plaintiff's copyrighted drawings. Exh. G to Pl.'s Mot. for Prelim. Inj. (DE 7-30 - 7-38). These include ACUI's designs of Carolina Yachts 54' IPS Express, Spencer Yachts 60' IPS Sportfisherman, Spencer Yachts 53' IPS Express, F&S 70' Sportfisherman, F&S 68' Sportfisherman, Bonadeao Boatworks 34' Cuddy Cabin, Spencer 64' Sportfisherman, F&S 72' Sportfisherman, and Spencer 86' Sportfisherman, which Defendants used to create its drawings and renderings. Therefore, there is ample evidence establishing factual copying.

Additionally, Plaintiff submitted an affidavit of Mr. Schofield, a naval architect and naval engineer. (DE 7-42). Mr. Schofield examined ten (10) of ACUI's yacht designs and similar Defendant Matthews' yacht designs. *Id.* Mr. Schofield opines that "the yacht designs of Applied Concepts and those of Steven Matthews were created from the same set of data, similar to that found in computer CAD drawing files." *Id.*

Lastly, Defendants' infringing drawings copy all of the elements of Plaintiff's drawings, including the protected original superstructure and hull of the yachts. Therefore, there is substantial similarity between the infringing works and Plaintiff's copyrighted drawings. Consequently, Plaintiff carried its burden of establishing legal as well as factual copying by the Defendants.

Overall, the undersigned finds that Plaintiff has established substantial likelihood of success

on the merits of its copyright infringement claim.

**B. Irreparable harm**

The settled rule is that irreparable harm could be presumed when copyright infringement is proven and when fair use doctrine is not raised as a defense.[15] *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001); *C.B. Fleet Co., Inc. v. United Holdings, Inc.*, 510 F. Supp.2d 1078,1083 (S.D. Fla. 2007). However, the Supreme Court recently held that injunction does not automatically follow the determination of infringement, and that courts should continue to employ equitable principles rather than categorical rules when considering whether an injunction should issue and whether irreparable harm will be suffered in the absence of an injunction. *eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 390 (2006) (considering propriety of a permanent injunction in a patent case). The Eleventh Circuit stated that "no obvious distinction exists between permanent and preliminary injunctive relief to suggest that *eBay* should not apply to the latter," but declined to discuss the implications of *eBay* further. *North Am. Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008) (trademark infringement case); *Sylvan Learning Inc. v. Learning Solutions, Inc.*, 795 F. Supp.2d 1284, 1296-99 (S.D. Ala. 2011).

Courts have applied *eBay* in the context of preliminary injunctions under the Copyright Act. *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010); *Live the Life Ministries, Inc. v. PAIRS Foundation, Inc.*, 4:11cv194-WS/WCS, 2011 WL 6780997, at *12-14 (N.D. Fla. Sept. 27, 2011). The *eBay* Court quoted the Copyright Act and stated that injunctions under the Patent and Copyright Acts were governed by equitable principles, which did not contemplate bright line rules. *eBay Inc.*, 547 U.S. at 392-93. Therefore, it follows that an injunction should not automatically issue after a

---

[15] Fair use doctrine has not been raised in this case.

finding of copyright infringement is made. Rather, the court should examine whether on the facts of the case at issue plaintiff has shown that failure to issue an injunction will result in irreparable harm. *Salinger*, 607 F.3d at 82.

Only harm that cannot be remedied after a final adjudication is relevant. *Id.* at 81. Harm might be irreparable because the loss is difficult to replace, or difficult to measure, or because plaintiff should not be expected to suffer such a loss. *Id.* Possibility of market confusion and difficulty of proving loss of sales due to infringement may qualify harm as irreparable in copyright infringement cases. *Id.* Plaintiff's loss of ability to control its own reputation may also make harm irreparable. *C.B. Fleet Co., Inc. v. United Holdings, Inc.*, 510 F. Supp.2d 1078,1083 (S.D. Fla. 2007). Finally, the court may consider plaintiff's delay in seeking relief. *R. Miller Architecture, Inc. v. Edgington Enter., Inc.*, 06-cv-871-Orl-19ADB, 2006 WL 2226297, at *7 (M.D. Fla. Aug 3, 2006).

Here, the harm is imminent because Defendants' website advertises infringing designs. Also, there is great possibility of market confusion if Defendants are not enjoined from using Plaintiff's designs. Additionally, Plaintiff will not be able to control its reputation if infringing designs continue to be available in the marketplace.

Only one factor weighs against finding that Plaintiff will suffer irreparable harm in the absence of an injunction, and it is delay in seeking relief. For example, Plaintiff's cease and desist letters indicate that it was aware of Defendant Matthews' misappropriation of Plaintiff's designs since at least May of 2011. (DE 7-44). Plaintiff filed suit in state court against the Defendants for misappropriation of trade secrets also in 2011. (DE 4). However, the instant case was not filed until January 30, 2012.

Mr. French testified that when he wrote the cease and desist letter telling Defendant

Matthews to stop utilizing ACUI's trade secrets on May 9, 2011, he did not know that Defendant Matthews actually had ACUI's drawings and was essentially reselling them. Apr. 2, 2012 Hr'g Tr., pp. 46-50. Mr. French testified that he learned that Defendants had ACUI's drawings when Defendants' drawings started showing up online. *Id.* It took Plaintiff over three months to get Certificates of Registration, which are the prerequisites to an infringement suit. Apr. 5, 2012 Hr'g Tr., pp. 61-63 (DE 44). Therefore, Plaintiff acted as expeditiously as possible under the circumstances. Thus, the undersigned finds that Plaintiff is likely to suffer irreparable harm if preliminary injunction is not granted.

**C. Other factors for a preliminary injunction**

Plaintiff must demonstrate that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party, and that the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

Preliminary injunction should not be denied because of the devastating effect on the defendant's business built on copyright infringement. *Ga. Television Co. v. TV News Clips of Atlanta, Inc.*, 718 F. Supp. 939, 949-50 (N.D. Ga. 1989). Likewise, it is axiomatic that public interest can only be served by upholding copyright protection. *Id.*

Here, Defendant Matthews testified that he is the sole provider for his family and also needs the income to pay for his diabetes medication. Apr. 5, 2012 Hr'g Tr., p. 243 (DE 44). Defendant Matthews also testified that he now works only with former clients of ACUI. *Id.* at 237-38. Therefore, Defendants argue that an injunction will have a devastating effect on them. However, harm to the Plaintiff in not being able to earn income from the copyrighted drawings it created and from not being able to create derivative works from them is substantial. Likewise, Defendant

Matthews has drafting and design skills that can provide him employment. Therefore, harm to the Plaintiff outweighs any harm Defendants will experience as the result of the injunction.

Also, protecting Plaintiff's copyright is not against the public interest. Rather, it will serve that interest. Accordingly, Plaintiff established that Defendants should be enjoined from infringing Plaintiff's copyright.

Therefore, this Court **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Plaintiff's Motion for a Preliminary Injunction, and enjoin Defendants from infringing upon Plaintiff's copyright in drawings subject to this suit with the exception of the hull of the 62' F&S Sportfishing vessel.[16]

## D. Security

The amount of an injunction bond is within the sound discretion of the district court. *Carillon Imps., Ltd. v. Frank Resce Int'l Group, Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997). Defendants state that they will lose approximately $15,000 per month in net profit as a result of an injunction. (DE 40-1). This case is set for trial in December, 2012, or in approximately two months. Therefore, security of $30,000 is appropriate in this case.

Therefore, this Court **RECOMMENDS** that the District Court **REQUIRE PLAINTIFF TO PROVIDE SECURITY IN THE AMOUNT OF $30,000.00.**

---

[16]Plaintiff did not specify in the Motion for Preliminary Injunction what exactly Plaintiff seeks to enjoin. The Verified Complaint seeks an injunction "on such terms as the Court may deem reasonable to prevent or restrain continued or further infringement by defendants," as well as impounding of all infringing copies, an order prohibiting Defendants from publishing infringing designs online, and other relief. (DE 1, p. 26). Plaintiff did not advance any arguments yet on the issue of impounding, and enjoining copyright infringement in this fashion will maintain the status quo until the District Court can resolve the case on the merits.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Donald L. Graham, United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that "within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."); *see also* Fed. R. Civ. P. 72(b) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy"). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE and SUBMITTED** this 1 day of October, 2012, at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

_____

JAMES M. HOPKINS,
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Hon. Donald L. Graham, United States District Court Judge for the Southern District of Florida
Counsel of record